Steven J. Nataupsky (CA SBN 155913*)*
steven.nataupsky@knobbe.com
Lynda J. Zadra-Symes (CA SBN 156511)
lynda.zadrasymes@knobbe.com
Jacob R. Rosenbaum (CA SBN 313190)
jacob.rosenbaum@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Plaintiff
MONSTER ENERGY COMPANY

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONSTER ENERGY COMPANY, a Delaware corporation, | Case No. 5:23-cv-00568 |
| Plaintiff, | **COMPLAINT FOR TRADEMARK INFRINGEMENT, TRADE DRESS INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, CANCELLATION, AND UNFAIR COMPETITION** |
| v. | |
| BEAST COOKIE COMPANY, LLC | |
| Defendant. | **DEMAND FOR JURY TRIAL** |

Plaintiff Monster Energy Company ("Monster"), hereby complains of Defendant Beast Cookie Company, LLC ("Beast Cookie" or "Defendant"), and alleges as follows:

## I.     <u>THE PARTIES</u>

1. Monster is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 1 Monster Way, Corona, California 92879.

2. Upon information and belief, Defendant Beast Cookie is a limited liability company organized and existing under the laws of California, with a principal place of business at 9745 Lurlune Ave. Chatsworth, CA 91311.

## II.     <u>JURISDICTION AND VENUE</u>

3. This is an action for (1) trademark infringement, trade dress infringement, and false designation of origin under 15 U.S.C. § 1125(a); (2) trademark infringement under 15 U.S.C. § 1114; (3) cancellation of U.S. Trademark Registration No. 5,916,482 pursuant to 15 U.S.C. § 1119; (4) unfair competition arising under California Business & Professions Code § 17200 *et seq.*; and (5) California common law unfair competition.

4. The Court has original subject matter jurisdiction over the claims relating to trademark infringement, false designation of origin, and cancellation of Defendant's trademark registration pursuant to 15 U.S.C. §§ 1116 and/or 1121(a). The Court also has original subject matter jurisdiction over those claims under 28 U.S.C. §§ 1331 and 1338, as these claims arise under the laws of the United States. The Court has supplemental jurisdiction over the claims in this Complaint which arise under state statutory and common law pursuant to 28 U.S.C. §§ 1338(b) and 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

5. This Court has personal jurisdiction over Defendant Beast Cookie

because, among other reasons, Beast Cookie has committed acts of trademark infringement, false designation of origin, and unfair competition in this judicial district, including but not limited to using infringing marks in connection with the advertisement, marketing, promotion, sale, and offering for sale of goods to customers in this Judicial District.  These acts have occurred at least through advertising, sales, and offers for sale on at least the following websites: https://www.beastenergycookie.com/, https://www.costco.com/beast-cookie-co.-energy-cookies%2C-3-oz%2C-20-count.product.4000022486.html, https://www.walmart.com/browse/food/cookies/beast-energy/976759_976787_1001391/YnJhbmQ6QmVhc3QgRW5lcmd5, https://www.amazon.com/Beast-Energy-Cookie-Protein-Dairy-Free/dp/B08XYJQXPP, https://www.samsclub.com/p/oatmeal-rasin-beast-cookie/prod26340867, and https://www.kroger.com/p/beast-oatmeal-raisin-energy-cookie/0086000123177, and in retail stores in this Judicial District. Defendant Beast Cookie's acts form a substantial part of the transactions, occurrences, events, and/or omissions giving rise to Monster's claims.

6.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events complained of herein took place in this Judicial District.

**III.     COMMON ALLEGATIONS FOR ALL CLAIMS OF RELIEF**

**A.     Monster's Trademarks and Trade Dress**

7.     Monster is a nationwide leader in the business of developing, marketing, selling, and distributing beverages, including energy drinks.  Monster has achieved extensive exposure and widespread recognition of its MONSTER® brand through its extensive advertising and sale of its energy drinks and other products, its sponsorship of sports, athletes and teams, and its extensive marketing and promotion of the brand.

8.     In 2002, Monster launched its MONSTER ENERGY® drink brand,

bearing its now-famous MONSTER® mark, MONSTER ENERGY® mark, ℳ® ("Claw Icon Mark") mark, and UNLEASH THE BEAST!® mark.  Also since 2002, Monster has consistently used distinctive trade dress with the product packaging and promotional materials for its MONSTER ENERGY® drink brand. This trade dress includes prominent use of the color green often in combination with the colors black and/or white ("the Monster Trade Dress").  Images of Monster's flagship original MONSTER ENERGY® drink, the container which displays the UNLEASH THE BEAST!® mark and Monster Trade Dress are shown below.




9.      Since at least 2002, Monster has been, and still is, engaged in the development, marketing and sale of beverages bearing Monster's UNLEASH THE BEAST!® mark and a family of other BEAST-inclusive marks in connection with its MONSTER® line of drinks.  Monster's UNLEASH THE BEAST!® mark, in addition to appearing on the original MONSTER ENERGY® drink container, has also appeared on the containers of other products in the MONSTER® line of drinks, including continually appearing on the Lo-Carb MONSTER ENERGY® drink since that product was launched in 2003.

10.      Since the launch of the MONSTER® line of drinks in 2002, Monster

has continuously used the UNLEASH THE BEAST!® mark and a family of other marks containing the term BEAST, including but not limited to, UNLEASH THE NITRO BEAST!®, REHAB THE BEAST!®, REHAB THE BEAST! WWW.MONSTERENERGY.COM®, UNLEASH THE ULTRA BEAST!®, PUMP UP THE BEAST!® and HYDRATE THE BEAST!® on its MONSTER® line of drinks.  Some representative examples of Monster's use of its BEAST marks on its MONSTER® line of drinks are shown below:



11.    Monster is the owner of numerous trademark registrations for its BEAST marks, including but not limited to the following U.S. Trademark Registrations:

| MARK | REG. NO. | GOODS | DATE FILED | REG. DATE |
|---|---|---|---|---|
| UNLEASH THE BEAST! | 2,769,364 | Cl 32 - Fruit juice drinks, soft drinks, carbonated soft drinks and soft drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs | 12/18/2002 | 9/30/2003 |
| REHAB THE BEAST! WWW.MONSTERENERGY.COM | 4,292,502 | Cl 30 - Ready to drink tea, iced tea and tea based beverages; ready to drink flavored tea, iced tea and tea based beverages<br><br>Cl 32 - Non-alcoholic beverages, namely, energy drinks, sports drinks and fruit juice drinks, all the foregoing enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs | 2/15/2012 | 2/19/2013 |
| REHAB THE BEAST! | 4,336,329 | Cl 30 - Ready to drink tea, iced tea and tea based beverages; ready to drink flavored tea, iced tea and tea based beverages<br><br>Cl 32 - Non-alcoholic beverages, namely, energy drinks, sports drinks and fruit juice drinks; all the foregoing enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs | 11/3/2010 | 5/14/2013 |

| MARK | REG. NO. | GOODS | DATE FILED | REG. DATE |
|---|---|---|---|---|
| UNLEASH THE ULTRA BEAST! | 4,371,544 | Cl 32 - Non-alcoholic beverages, namely, carbonated soft drinks; carbonated drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs; carbonated energy drinks and sports drinks | 11/19/2012 | 7/23/2013 |
| UNLEASH THE NITRO BEAST! | 4,394,044 | Cl 32 - Non-alcoholic beverages, namely, carbonated soft drinks; carbonated drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs; carbonated energy or sports drinks | 12/14/2010 | 8/27/2013 |
| PUMP UP THE BEAST! | 4,482,659 | Cl 05 - Nutritional supplements in liquid form; vitamin fortified beverages | 5/15/2013 | 2/11/2014 |
| PUMP UP THE BEAST! | 4,482,660 | Cl 29 - Dairy-based beverages; dairy-based energy shakes | 5/15/2013 | 02/11/2014 |
| PUMP UP THE BEAST! | 4,542,107 | Cl 30 - Ready to drink coffee-based beverages; coffee-based shakes for boosting energy; chocolate-based shakes for boosting energy; ready to drink chocolate-based beverages | 5/15/2013 | 6/3/2014 |
| PUMP UP THE BEAST! | 4,546,402 | Cl 32 - Non-alcoholic beverages, namely, non-alcoholic and non- | 5/15/2013 | 06/10/2014 |

| MARK | REG. NO. | GOODS | DATE FILED | REG. DATE |
|---|---|---|---|---|
| | | carbonated drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs; non-carbonated energy or sports drinks | | |
| HYDRATE THE BEAST! | 5,402,465 | Cl 32 - Non-alcoholic beverages, namely, energy drinks, soft drinks, sports drinks, and flavored waters; drinking water, namely, water enhanced with vitamins, nutrients, proteins, and/or amino acids | 06/16/2016 | 02/13/2018 |
| UNLEASH THE NITRO BEAST! | 5,622,925 | Cl 05 - Nutritional energy supplements in liquid form; nutritional supplement beverages containing vitamins | 12/14/2010 | 12/04/2018 |
| REHAB THE BEAST! | 5,628,025 | Cl 05 - nutritional energy supplements in liquid form; nutritional supplement beverages containing vitamins | 11/03/2010 | 12/11/2018 |
| UNLEASH THE ULTRA BEAST! | 5,633,094 | Cl 05 - Nutritional energy supplements in liquid form; nutritional supplement beverages containing vitamins | 11/19/2012 | 12/18/2018 |
| UNLEASH THE SALTY BEAST! | 5,783,086 | Cl 32 - Non-alcoholic beverages, namely, energy drinks, soft drinks, sports drinks, and fruit juice drinks | 04/13/2018 | 06/18/2019 |
| UNLEASH THE | 5,820,901 | Cl 05 - Nutritional supplements in liquid | 01/16/2019 | 07/30/2019 |

| MARK | REG. NO. | GOODS | DATE FILED | REG. DATE |
|---|---|---|---|---|
| BEAST! | | form.<br><br>Cl 20 - Furniture; chairs; gaming chair.<br><br>Cl 43 - Bar services; café services; mobile restaurant services; restaurant services; mobile café services for providing food and drink | | |
| UNLEASH THE BEAST! | 4,975,822 | Cl 25 - Clothing, namely, tops, shirts, t-shirts, hooded sweatshirts, sweat shirts | 03/07/2014 | 06/14/2016 |
| UNLEASH THE SALTY BEAST! | 5,783,086 | Cl 35 - Non-alcoholic beverages, namely, energy drinks, soft drinks, sports drinks, and fruit juice drinks | 04/13/2018 | 06/18/2019 |
| UNLEASH THE BEAST! | 5,927,420 | Cl 35 - Promoting goods and services in the sports, motorsports, electronic sports, and music industries through the distribution of printed, audio and visual promotional material; promoting sports, electronic sports and music events, performances and competitions for others<br><br>Cl 41 - Entertainment services in the nature of sporting events and competitions, electronic sporting events and competitions, and music | 03/14/2018 | 12/03/2019 |

| MARK | REG. NO. | GOODS | DATE FILED | REG. DATE |
|------|----------|-------|-----------|-----------|
| | | performances and event | | |
| REHAB THE BEAST! WWW.MON STERENER GY.COM | 5,552,820 | Cl 05 - nutritional energy supplements in liquid form; nutritional supplement beverages containing vitamins | 02/15/2012 | 09/04/2018 |

12.     Attached hereto as Exhibits A1 - A19 are true and correct copies of Monster's trademark registrations identified in Paragraph 11 of this Complaint, which are incorporated herein by reference.  Collectively, those registrations and trademarks, including all common law rights therein, are referred to as the "BEAST Marks".

13.     Pursuant to 15 U.S.C. § 1065, U.S. Trademark Registration Nos. 2,769,364; 4,394,044; 4,336,329; 4,371,544; 4,482,659; 4,482,660; 4,542,107; 4,546,402; and 4,544,296 identified in Paragraph 11 above are incontestable.

14.     As a result of Monster's widespread, exclusive, and continuous use of its BEAST Marks to identify the goods and services listed in the table in Paragraph 11 above, Monster owns valid and subsisting federal statutory and common law rights to the BEAST Marks.

15.     Monster has and continues to widely market and promote its BEAST Marks and Monster Trade Dress by displaying the marks and trade dress on billions of cans of its MONSTER line of drinks sold in the U.S.; on promotional and point of sale materials; on product samplings; on apparel and merchandise; in magazines and other industry publications; on the MONSTER ENERGY® website, the Monster Army website, and other Internet websites; on Monster's social media sites; at trade shows, concert tours and live events; and through sponsorships of athletes.

16.     The MONSTER® line of drinks bearing Monster's BEAST Marks

has achieved substantial commercial success.  Since 2002, Monster has sold more than 48 billion cans of its MONSTER line of drinks worldwide and sales of the MONSTER® line of drinks have generated over $107 billion in estimated total retail revenues internationally.  In 2022, approximately 6.7 billion cans were sold worldwide under the MONSTER® brand, of which approximately 3 billion were sold in the US.  The MONSTER® brand has established itself as the best-selling energy drink brand in the United States.  The vast majority of Monster's cans bearing its MONSTER® marks also display one of Monster's BEAST Marks and the Monster Trade Dress.

17.    The MONSTER® line of drinks are sold in over 380,000 retail outlets in the United States, including convenience stores, gas stations, grocery stores, mass merchandisers (e.g., Costco, Wal-Mart, and Target), drug stores, and many other stores.

18.    Monster has distributed millions of point-of-sale marketing items bearing its BEAST Marks and/or Monster Trade Dress.  These point-of sale marketing items include, but are not limited to, case stackers, stickers, displays for shelves, suction cup racks and coolers.  Below are true and accurate representative pictures illustrating examples of Monster's point-of-sale materials.

1
2
3
4
5
6
7
8
9
10
11
12
13



14
15
16
17
18
19
20



21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28






1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



19.    Monster also widely markets and promotes the BEAST Marks to consumers through clothing sales and giveaways.  Since 2002, Monster has licensed, sold and/or given away millions of items of clothing bearing its UNLEASH THE BEAST!® marks.  Examples of use of BEAST Marks on some of these products are shown below:



20.     Further, Monster allocates a large proportion of its marketing, advertising, and promotional budget to athlete endorsements and sponsoring athletic competitions and events.  Monster has sponsored BMX; mountain biking; skateboarding; motorsports, including Road Racing World Championship Grand Prix ("MotoGP") events, the AMA Supercross Series (as the title sponsor for all 16 series races), and NASCAR; professional fighting including the Ultimate Fighting Championship ("UFC"); basketball; baseball; hockey; fitness competitions; and the X Games, among many other events.  At Monster-sponsored events, the BEAST Marks and Monster Trade Dress are prominently promoted at the venues, including on banners and on large transport, support, and hospitality tractor trailers, motor homes, and other promotional vehicles.

21.     In addition, Monster sponsors hundreds of athletes and athletic teams that compete in a wide variety of sports, including BMX, mountain biking, motocross, MotoGP, AMA Superbike, Supercross, World Superbike, CrossFit, surfing, skateboarding, wakeboarding, skiing, snowboarding, snowmobile racing, off-road racing, and various classes of NASCAR racing.  When Monster sponsors an athlete, both sides agree that the athlete's clothing, gear, and equipment will

display the MONSTER® brand.  Many of the events in which the Monster-sponsored athletes and athletic teams compete are broadcast nationally on television, and the broadcasts display the BEAST Marks and/or Monster Trade Dress.  An example is shown below:





22.    Further, Monster promotes its many sponsored athletes and events on its social media channels.  When Monster promotes its sponsored athletes and

1  events it frequently uses its BEAST Marks and/or the hashtag #unleashthebeast.

2  An example of Monster's use of the BEAST Marks in connection with its social

3  media posts featuring its sponsored athletes and events is shown below:





27    23.    Monster extensively promotes its brand, including its BEAST Marks

28  and Monster Trade Dress through, for example, the sponsorship of gaming events

such as ESL and DreamHack.  In addition, Monster frequently promotes its sponsored gamers and gaming events using its UNLEASH THE BEAST!® Mark and/or hashtag #unleashthebeast.  An example of Monster's use of the BEAST Marks and Monster Trade Dress in connection with live gaming events is shown below.



24.    Monster's BEAST Marks, and Monster Trade Dress have also received significant exposure in national publications.  For example, the MONSTER ENERGY® drink brand and associated marks and trade dress have been featured in *Fortune, Newsweek, Beverage World, Beverage Spectrum, Forbes*, and/or *Business Week*, among other publications.

25.    Monster's BEAST Marks and Monster Trade Dress also receive extensive publicity and exposure through Monster's websites, including its www.monsterenergy.com website and social media sites including Monster's Facebook, Twitter, Instagram, and YouTube accounts.  As of March 2023, Monster's Facebook page has over 25.4 million "likes"; Monster's YouTube page has over 3.12 million subscribers; Monster's Twitter page has approximately 3

million followers; Monster's Instagram page has approximately 8.4 million followers; and Monster has approximately 2.4 million followers on TikTok. The BEAST Marks and Monster Trade Dress are prominently displayed on these websites and/or social media sites.

26. The BEAST Marks and Monster Trade Dress were also marketed and promoted while prominently displayed on the Las Vegas monorail (the "Monster Train"). In 2003, Monster engaged in a massive advertising campaign in connection with its sponsorship of the Monster Train, which prominently featured the UNLEASH THE BEAST! ® mark and Monster Trade Dress. The Monster Train was featured in The Wall Street Journal, Time, and USA Today in 2003, and these articles were read by an estimated 32 million people in the U.S. Television and internet reports that discussed the Las Vegas Monster Train reached another 70 million readers, and television and radio promotions were circulated to approximately 36 million people in the U.S.



27. As a result of Monster's substantial use and promotion of its BEAST Marks and Monster Trade Dress, Monster has obtained strong common law rights in the BEAST Marks and Monster Trade Dress, which are not only inherently distinctive but have also acquired strong secondary meaning. Customers in this Judicial District and elsewhere readily recognize the BEAST Marks and Monster Trade Dress as distinctive designations of the origin of Monster's drinks,

beverageware, hats, clothing, bags, sporting equipment, accessories, promotional items, and numerous other products.  The BEAST Marks and Monster Trade Dress are intellectual property assets of enormous value as symbols of Monster and its quality, reputation, and goodwill.

**B.     Defendants' Infringing Activities**

28.     Defendant Beast Cookie is in the business of producing, selling, and distributing caffeinated, energy cookies.  Defendant owns and operates the website https://www.beastenergycookie.com/ and maintains a variety of social media accounts including Facebook, Twitter, and Instagram.

29.     Defendant's website provides customers with the option to purchase and ship Defendant's goods bearing the BEAST ENERGY COOKIE mark anywhere in the U.S., including to customers in this Judicial District.

30.     Without permission or consent from Monster, Defendant has sold, offered to sell, and/or marketed energy cookies bearing a trademark that is confusingly similar to Monster's BEAST Marks (the "Accused Products"), used in connection with energy drinks.  Defendant is also using a trade dress confusingly similar to the Monster Trade Dress to market and sell its energy cookies.  Examples of some of the Accused Products and promotional materials for the Accused Products are shown below.






31.     On November 15, 2018, Defendant filed U.S. Trademark Application Serial No. 88,194,686 for the mark

32.     On November 19, 2019, Defendant's application for proceeded to registration, and was issued U.S. Trademark Registration No. 5,916,482.

33.     Upon information and belief Defendant sells the Accused Products through the same retail outlets that the MONSTER ENERGY® line of drinks are sold, including gas stations and convenience stores.  Further, upon information and belief, in late 2022 Defendant began expanding its channels of trade to include additional retailers of Monster's MONSTER ENERGY® line of drinks, including Costco, Walmart, and Amazon.

34.     Defendant's Accused Products are energy products, and travel in identical channels of trade, and are sold to identical customers as Monster's MONSTER ENERGY® line of drinks.

35.     Further, Defendant is clearly aware of Monster and its valuable trademarks, and upon information and belief was aware of Monster and its trademarks prior to committing the infringing acts complained of herein.  For example, in an attempt to further associate itself with Monster, Defendant has advertised the Accused Products, bearing the infringing Beast Mark and infringing trade dress on its social media platforms using an image of Monster's

MONSTER ENERGY® drink; as shown on Defendant's Instagram page, reproduced below:



36.    Defendant has also marketed the Accused Products using the hashtag #monster on its social media platforms, in a further attempt to create an association between Defendant's products and Monster.

37.    Defendant also markets the Accused Products in the same way Monster markets its MONSTER ENERGY® line of drinks bearing its BEAST Marks.    For example, Defendant markets the Accused Products through sponsorship of athletes and events including BMX, mountain biking, motorsports, and fitness expositions.    Examples of Defendant's marketing of its BEAST products through athletes and events are shown below:





38.     Further, Defendant uses the tagline "UNTAMED ENERGY" in connection with the marketing and sale of its energy cookies bearing the infringing BEAST mark.  The tagline UNTAMED ENERGY is confusingly similar to Monster's UNLEASH-inclusive marks, particularly when used with Defendant's BEAST mark.  An example of Defendant's marketing of its BEAST

cookies featuring the UNTAMED ENERGY tagline is shown below:



39.     Defendant also prominently uses the color combination green and black on its product packaging and marketing materials.  This color scheme is confusingly similar to Monster's Monster Trade dress, and further exacerbates the likelihood of confusion.

40.     Without permission or consent from Monster, Defendant has infringed Monster's BEAST Marks in interstate commerce by making, using, promoting, advertising, selling, and/or offering to sell the Accused Products using marks that are confusingly similar to Monster's marks.

41.     Upon information and belief, Defendant's actions alleged herein are intended to cause confusion, mistake, or deception as to the source of Defendant's products and are intended to cause consumers and potential customers to believe that Defendant's business and the goods that it offers are associated with Monster or its MONSTER ENERGY® line of products or services, when they are not.

42.     Indeed, Defendant has a duty to avoid confusion with Monster and

its marks because Defendant entered the market after Monster.  Nevertheless, Defendant has purposely sold, promoted, marketed, and/or distributed its products in a manner that causes a likelihood of confusion with Monster and its marks.

43.    By virtue of the acts complained of herein, Defendant has created a likelihood of injury to Monster's business reputation and goodwill, caused a likelihood of consumer confusion, mistake, and deception as to the source of origin or relationship of Monster's goods and services and Defendant's products and has otherwise competed unfairly with Monster by unlawfully trading on and using Monster's marks without Monster's permission or consent.

44.    Upon information and belief, Defendant's acts complained of herein are willful and deliberate.

45.    Defendant's acts complained of herein have caused damage to Monster in an amount to be determined at trial, and such damages will continue to increase unless Defendant is enjoined from its wrongful acts and infringement.

46.    Defendant's acts complained of herein have caused Monster to suffer irreparable injury to its business.  Monster will suffer substantial loss of goodwill and reputation unless and until Defendant is preliminarily and permanently enjoined from the wrongful acts complained of herein.

## IV.    FIRST CLAIM FOR RELIEF

### (Trademark Infringement, Trade Dress Infringement, and False Designation of Origin Under 15 U.S.C. § 1125(a))

47.    Monster hereby repeats and realleges paragraphs 1 through 46 of this Complaint as though fully set forth herein.

48.    As a result of the widespread use and promotion of Monster's BEAST Marks and Monster Trade Dress, the marks and trade dress have acquired strong fame and secondary meaning to consumers and potential consumers, in that consumers and potential consumers have come to associate the BEAST

Marks and Monster Trade Dress with Monster.

49.     The vast majority of Monster's products sold under the Monster brand since 2002 bear one or more of Monster's well-known BEAST Marks. The BEAST Marks often appear on products in the same coolers, and are accompanied by point-of-sale materials bearing one or more of the BEAST Marks, such that consumers frequently see several BEAST Marks displayed together and have come to recognize Monster's family of BEAST Marks.

50.     Defendant's actions are likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendant's goods, and are likely to cause consumers to believe, contrary to fact, that Defendant's goods are sold, authorized, endorsed, or sponsored by Monster, or that Defendant is in some way affiliated or sponsored by Monster, when it is not.

51.     Defendant's conduct as alleged herein constitutes trademark infringement, trade dress infringement, false designation of origin and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

52.     Upon information and belief, Defendant had actual knowledge of Monster's prior ownership and prior use of the BEAST Marks and Monster Trade Dress.  Defendant's conduct as alleged herein is willful, and is intended and likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with Monster.

53.     Defendant has damaged Monster in an amount to be determined at trial.

54.     Defendant has irreparably injured Monster.  Such irreparable injury will continue unless Defendant is preliminarily and permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

## V.    <u>SECOND CLAIM FOR RELIEF</u>

### (Trademark Infringement Under 15 U.S.C. § 1114)

55.    Monster hereby repeats and realleges paragraphs 1 through 54 of this Complaint as though fully set forth herein.

56.    Monster owns valid and enforceable federally registered trademarks for the BEAST Marks, including at least the registrations listed in Paragraph 11 above.

57.    Defendant has used in commerce, without permission from Monster, a mark which is a colorable imitation of and/or confusingly similar to the BEAST Marks, in connection with the advertising, marketing, promoting, and/or sale of Defendant's goods.

58.    Defendant's unauthorized use in commerce as alleged herein is likely to cause confusion or mistake, or to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendant's goods, and is likely to cause consumers to believe, contrary to fact, that Defendant's goods are sold, authorized, endorsed, or sponsored by Monster, or that Defendant is in some way affiliated with or sponsored by Monster.    Defendant's conduct therefore constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

59.    Upon information and belief, Defendant has committed the foregoing acts of infringement with full knowledge of Monster's prior rights in the BEAST Marks and with the willful intent to cause confusion and trade on Monster's considerable goodwill.

60.    Defendant, by its actions, has damaged Monster in an amount to be determined at trial.

61.    Defendant, by its actions, has irreparably injured Monster. Such irreparable injury will continue unless Defendant is preliminarily and permanently enjoined by this Court from further violation of Monster's rights, for

which Monster has no adequate remedy at law.

## VI. THIRD CLAIM FOR RELIEF

### (Petition for Cancellation of U.S. Trademark Registration No. 5,916,482 Pursuant to 15 U.S.C. § 1119)

62. Monster hereby repeats, realleges, and incorporates by reference Paragraphs 1-61 of this Complaint as though fully set forth herein.

63. This is a claim for cancellation of Defendant's U.S. Trademark Registration No. 5,916,482 under 15 U.S.C. § 1119.

64. U.S. Trademark Registration No. 5,916,482 for the  mark in Class 30 for "cookies" has a registration date of November 19, 2019, a filing date of November 15, 2018, and a first use date of April 17, 2019, and lists Defendant as the owner of the registration.

65. Since at least 2002, prior to the filing, registration date, and alleged first use date of U.S. Trademark Registration No. 5,916,482, Monster has continuously used and promoted its BEAST Marks in interstate commerce in connection with its products, including energy drinks. By virtue of Monster's continuous and substantial use and promotion of the BEAST Marks, the marks have become a strong identifier of Monster and its products and distinguish Monster's products from those of others. Monster has built up significant and valuable goodwill in its BEAST Marks. In addition to its common law rights, Monster relies on its U.S. Trademark Registrations, as listed in Paragraph 11, for this cancellation claim.

66. Upon information and belief, Defendant Beast Cookie filed the application that led to U.S. Trademark Registration No. 5,916,482 with full knowledge of Monster's prior rights in the BEAST Marks.

67. Monster is being competitively harmed by the continued registration of U.S. Registration No. 5,916,482.

-27-

68.     Monster will be damaged by continued registration of Defendant's U.S. Trademark Registration No. 5,916,482 in that the [BEAST] mark is confusingly similar to Monster's BEAST Marks.  Potential purchasers, upon seeing the identical distinctive BEAST portion in Defendant's [BEAST] mark, are likely to mistakenly believe that such a term and the products offered thereunder originated with or are connected or associated with, or sponsored, licensed, or approved by Monster.  In addition, the goods covered by U.S. Trademark Registration No. 5,916,48 are related to Monster's goods in connection with which Monster uses its BEAST Marks throughout the United States.  Thus, the registration and use by Defendant of the [BEAST] mark in connection with Defendant's goods for all channels of trade is likely to cause confusion, or to cause mistake or to deceive.

69.     In view of the foregoing, Defendant's U.S. Trademark Registration No. 5,916,482 should be cancelled pursuant to 15 U.S.C. § 1119.

## VII.   FOURTH CLAIM FOR RELIEF

### (Unfair Competition Under California Business & Professions Code §§ 17200 *et seq.*)

70.     Monster hereby repeats, realleges, and incorporates by reference Paragraphs 1-69 of this Complaint as if set forth fully herein.  This is a claim for unfair competition under California Business & Professions Code §§ 17200, et seq.

71.     By virtue of the acts complained of herein, Defendant has caused a likelihood of confusion among consumers and the public and has unfairly competed in violation of Cal. Bus. & Prof. Code §§ 17200, et seq.

72.     Defendant's acts complained of herein constitute trademark infringement, trade dress infringement, and unfair competition which have

injured and damaged Monster.

73.     Defendant, by its actions, has irreparably injured Monster.  Such irreparable injury will continue unless Defendant is preliminarily and permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

## VII. <u>FIFTH CLAIM FOR RELIEF</u>
### (California Common Law Unfair Competition)

74.     Monster hereby repeats, realleges, and incorporates by reference Paragraphs 1-73 of this Complaint as if set forth fully herein.

75.     This is a claim for unfair competition under the common law of the State of California.

76.     Defendant's acts complained of herein constitute unfair competition under the common law of the State of California.

77.     By virtue of the acts complained of herein, Defendant has willfully and intentionally caused a likelihood of confusion among the purchasing public in this Judicial District and elsewhere, thereby unfairly competing with Monster in violation of the common law of the State of California.

78.     Defendant's aforementioned acts have damaged Monster in an amount to be determined at trial.

79.     Defendant has irreparably injured Monster.  Such irreparable injury will continue unless Defendant is preliminarily and permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

80.     Defendant's willful acts of unfair competition under California common law constitute fraud, oppression and malice.  Accordingly, Monster is entitled to exemplary damages pursuant to Cal. Civ. Code § 3294(a).

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Monster prays for judgment against Defendant as follows:

A.     That the Court render a final judgment in favor of Monster and against Defendant on all claims for relief alleged herein;

B.     That the Court render a final judgment that Defendant has violated Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) by willfully infringing the BEAST Marks and Monster Trade Dress by using a false designation of origin, through the marketing, sale, and promotion of Defendant's products and/or services; and Section 32 of the Lanham Act (15 U.S.C. § 1114) by willfully infringing the BEAST Marks;

C.     That the Court issue an order directing the United States Patent and Trademark Office to cancel Defendant's U.S. Trademark Registration No. 5,916,482 for the  mark;

D.     That Defendant, its agents, servants, employees, attorneys, successors, affiliates, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise, be forthwith preliminarily and permanently enjoined from:

   a.     using the marks BEAST ENERGY, BEAST COOKIE, , or BEAST, in connection with the advertising, promotion, or sale of Defendant's products and/or services; using any of the BEAST Marks in connection with Defendant's products and/or services; using any of the BEAST Marks or Monster Trade Dress in advertising or promoting Defendant's products and/or services; and/or using confusingly similar variations of any of the BEAST Marks or Monster Trade Dress in any manner that is likely to create the impression that Defendant's products originate from Monster, are endorsed by Monster, or are connected in any way with Monster;

-30-

b.   manufacturing, distributing, providing, selling, marketing, advertising, promoting, or authorizing any third party to manufacture, distribute, provide, sell, market, advertise, or promote any unauthorized products bearing any of the BEAST Marks or Monster Trade Dress, and/or any confusingly similar marks or trade dress;

c.   otherwise infringing any of the BEAST Marks or Monster Trade Dress;

d.   engaging in any activity that constitutes unfair competition with Monster;

e.   falsely designating the origin of Defendant's products and/or services;

f.   making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that (i) Defendant's products and/or services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Monster or (ii) Monster's goods and/or services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Defendant;

g.   using or authorizing any third party to use in connection with any business, goods, or services any false description, false representation, or false designation of origin, or any marks, names, words, symbols, devices, or trade dress that falsely associate such business, goods and/or services with Monster or tend to do so;

h.   filing any applications for registration of any trademarks, trade dress, or designs confusingly similar to the BEAST Marks; and

i.   aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (a) through (h);

E.   That Defendant be directed to file with this Court and serve on Monster within thirty (30) days after the service of the injunction, a report, in writing, under oath, setting forth in detail the manner and form in which it has complied with the injunction pursuant to 15 U.S.C. § 1116;

F.   That Defendant be required to account for and pay to Monster any and all profits derived by Defendant by virtue of Defendant's acts complained of herein;

G.   That Defendant be ordered to pay over to Monster all damages which Monster has sustained as a consequence of the acts complained of herein, subject to proof at trial, together with prejudgment and post-judgment interest;

H.   That this case be deemed exceptional and the amount of the damages be trebled and that the amount of profits be increased by as many times as the Court deems appropriate, pursuant to 15 U.S.C. § 1117;

I.   That Monster be awarded exemplary damages from Defendant pursuant to Cal. Civ. Code § 3294;

J.   That Defendant's actions be deemed willful;

K.   That an award of reasonable costs, expenses, and attorneys' fees be awarded to Monster pursuant to at least 15 U.S.C. § 1117;

L.   That Defendant be required to deliver and destroy all devices, literature, advertising, goods and other unauthorized materials bearing Defendant's BEAST ENERGY, BEAST COOKIE, _BEAST_ , and/or BEAST mark, or any of Monster's BEAST Marks or Monster Trade Dress, or any confusingly similar marks or trade dress, pursuant to 15 U.S.C. § 1118;

M.   That Monster be awarded restitution and disgorgement; and

N.     That Monster be awarded such other and further relief as this Court may deem just.

Respectfully submitted,
KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  March 30, 2023        By:  */s/ Jacob R. Rosenbaum*
                                        Steven J. Nataupsky
                                        Lynda J. Zadra-Symes
                                        Jacob R. Rosenbaum

                                        Attorneys for Plaintiff,
                                        MONSTER ENERGY COMPANY

# I.  <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Monster Energy Company hereby demands a trial by jury on all issues so triable.

Respectfully submitted,
KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  March 30, 2023       By:  */s/ Jacob. Rosenbaum*
Steven J. Nataupsky
Lynda J. Zadra-Symes
Jacob R. Rosenbaum

Attorneys for Plaintiff,
MONSTER ENERGY COMPANY

56115856

-34-